**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

CHARLES J. YOUNGBERG                                                          PLAINTIFF
#486348

V.                          CASE NO. 4:23-cv-00402 JM

ROGER GARDNER, Mayor,
Mountain View, *et al*.                                                       DEFENDANTS

<u>**ORDER**</u>

Plaintiff Charles J. Youngberg, in custody at the White County Detention Facility, paid the filing fee and filed a *pro se* Complaint under 42 U.S.C. § 1983 alleging a variety of constitutional violations. (Doc. 2, 27). Before the Court can screen his complaint as required by 28 U.S.C. § 1915A, some housekeeping is in order.

Since filing his initial Complaint, Youngberg has filed four amended complaints. (Docs. 10, 14, 28, 34). In the first two amended complaints, Youngberg seeks to add additional defendants and explains his reasons. (Doc. 10 & 14). In the third amended complaint, he repleads issues raised in his original Complaint and incorporates the defendants and arguments raised in his subsequently filed amended complaints. (Doc. 28). In his fourth amended complaint (Doc. 34), Youngberg seeks to add four additional defendants, but he fails to either replead his previously raised arguments or to explain with any specificity why these four new defendants should be added.  "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Accordingly, because allowing Youngberg to proceed with his fourth amended complaint would result in the abandonment of his previously raised claims—a result the Court does not think Youngberg intended—the Clerk is directed to correct the title of this pleading (Doc. 34) to "Motion

to Add Additional Defendants." For the reasons stated, that Motion (Doc. 34) is DENIED, and the Clerk is directed to remove from the docket sheet those named defendants. As a result, the Court will screen Youngberg's Third Amended Complaint. (Doc. 28). Youngberg's Motion to Amend (Doc. 37) is DENIED as moot.

## I.    Screening

Federal law requires courts to screen *in forma pauperis* complaints, 28 U.S.C. § 1915(e), and prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A. Claims that are legally frivolous or malicious; that fail to state a claim for relief; or that seek money from a defendant who is immune from paying damages should be dismissed before the defendants are served. 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. A complaint must contain enough facts to state a claim to relief that is plausible on its face, not merely conceivable. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). However, a *pro se* plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dept. of Corr. & Rehab.*, 294 F.3d 1043, 1043-1044 (8th Cir.2002) (citations omitted).

## II.    Background

The issues with which Youngberg complains arose from a domestic situation. Youngberg explains that, in April 2023, he brought his two minor children to Arkansas from his home in Missouri to visit their mother, Autumn Youngberg, over the Easter weekend. (Doc. 28 at 6). Youngberg says that he and the children stayed at the Days Inn where his wife was employed. (*Id*. at 5). According to Youngberg, Autumn never intended to allow him to return to Missouri with the children and faked her assault to cause his arrest. (*Id*. at 6–8). A public records search reveals that Youngberg was arrested on April 10, 2023, and criminally charged in Stone County Circuit Court with two counts of endangering the welfare of a minor and one count of aggravated assault

on a family member. *State v. Youngberg*, 69CR-23-27 (Stone County) (Docket Sheet). He is detained awaiting trial on these charges.

In his Complaint, Youngberg gives a thorough narrative of the events leading up to and following his arrest. A brief summary of his claims follows. Youngberg states that, while at the Days Inn, Autumn disabled his truck and planted narcotics in it in hopes of preventing him from leaving the state with their children. Specifically, he says that Autumn, aided by her coworkers Mason Patric and Haylee Wilcox, broke into his truck and planted methamphetamine hidden in Easter eggs. (*Id*. at 7). Youngberg also says that Autumn and two other coworkers, Travis and Leslie Haynes, damaged his truck to make it inoperable. (*Id*. at 6). He further alleges that the Days Inn Manager, Patricia Hess, knew of Autumn's plans and agreed to assist the group by allowing them to disable any security camera in the parking lot that would have captured their tampering with his truck. (*Id*. at 7–8).

Youngberg alleges that, during his stay, Autumn twice let herself into his room without his permission. (*Id*. at 8, 12). Both times, Autumn behaved erratically, destroyed property, and repeatedly hit herself. (*Id*.). Youngberg says that he attempted to record her behavior with his phone, but Autumn responded by hitting him in the head, back, and arms with a steak sauce bottle. (*Id*. at 9). Eventually Autumn calmed down and left the room.

Autumn entered Youngberg's room the second time in the middle of the night and woke him by hitting him. She also positioned herself in front of the door so that he could not leave. (*Id*. at 12). Once again, Autumn eventually calmed down and left the room. Youngberg did not see Autumn again until the following evening. Youngberg says he tried to leave the hotel with his dog and two children but was stopped in the parking lot by Autumn and the Haynes. (*Id*. at 14–15). He says Autumn surprised him by coming around his truck hysterically screaming and trying to hit

him. (*Id*. at 15). In the scuffle that followed, the Haynes secured the dog and the children in a hotel room, and Youngberg left the scene. (*Id*.at 15–16).

Youngberg walked to an adjacent gas station and contacted the Stone County Sheriff for assistance. (*Id*. at 16). According to Youngberg, two Mountain View police officers responded to the motel, did not believe his version of events, and wrongly arrest him. (*Id*. at 16–17).

During his arrest, Youngberg says Officer Duninol told him flatly that he had heard that fellow Officer Laquin did not like him and that they were going to help Autumn because "he did not deserve [his] children." (*Id*. at 17). Youngberg believes that Autumn's father, Ricky Canard orchestrated the entire incident. He says Canard conspired with members of the New Aryan Empire to prevent him from retaining custody of his children because he is of African descent. (*Id*. at 7, 17–18, 23). He further alleges that Canard told Autumn what she needed to do to regain custody of the children so that they could gain access to the children's government support. (*Id*. at 5). Youngberg argues Canard conspired with Mayor Gardner and Chief of Police Baffle, who likewise conspired with everyone in their employment, to make him lose custody of his children. (*Id*. at 5, 17).

Youngberg contends that his mistreatment continued once in custody. He alleges the Mayor told Officer Duninol to instruct hospital staff that Youngberg was "crazy and on drugs." (*Id*. at 17). Youngberg says that, under the orders of Sheriff Long, he has been subjected to cruel and unusual punishment in the Stone County Jail aimed at preventing him from speaking out against them. (*Id*. at 18). As an example, Youngberg says that on April 18, 2023, Jailer Greenfield, with the knowledge of Nurse Lowery, purposely hit him with a belly chain. (*Id*.). He also says Jailer Greenfield took away his mattress. (*Id*. at 19). Youngberg further states that Nurse Lowery has intentionally denied him medication and medical care for injuries he has sustained. (*Id*. at 20).

Youngberg next alleges his probation officer Ben Lockard also participated in the conspiracy by filing an affidavit requesting that he be denied bond. (*Id*. at 21–22). He also says that Autumn's privately retained attorney, Josh Rogers, encouraged her to slander Youngberg in the local media. (*Id*. at 23). Youngberg asserts his public defender Tammy Harris has acted ineffectively throughout his representation and states he heard her tell police officers that Youngberg was crazy and not to believe him. (*Id*. at 24–25). Youngberg contends Cleburne County Jailer Lindsay West has prevented him from accessing the legal materials and the law library. (*Id*. at 25–26). Finally, Youngberg contends Stone County Circuit Judge Don McSpadden and attorney Josh Rogers participated in the conspiracy to take his children away from him. (*Id*. at 28–29).

## III.    Discussion

### A.    Immunity

To state a claim for relief under § 1983, the complaint must allege that a person acting under the color of state law deprived the plaintiff of a constitutional or federally-protected statutory right. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). To be subject to a claim under § 1983, "a private actor must be a 'willful participant in joint activity with the State' in denying plaintiff's constitutional rights." *Magee v. Trustee of Hamline University, Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (internal citation omitted).

Youngberg's allegation of a vast community conspiracy orchestrated by his ex-father-in-law to prevent him from retaining custody of his children because of his race is conclusory and also does not bridge the gap for § 1983 liability to attach to the defendants who are not state actors. Youngberg's allegations that the mayor, sheriff, and police chief coordinated a conspiracy to deprive him of his children is likewise conclusory and does not contain sufficient allegations to state a claim, and those defendants are dismissed without prejudiced. Similarly, the private actors

5

are also dismissed without prejudice. Accordingly, Roger Gardner, Brandon Long, George Baffle, Patricia Hess, Autumn Youngberg, Ricky Canard, Travis Haynes, Leslie Haynes, Haylee Wilcox, Mason Patric, and Josh Rogers are dismissed. Similarly, because defense counsel in a criminal case, whether appointed or retained, is not a state actor, Tammy Harris is dismissed. *See Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981); *Chambers v. Kaplan*, 648 F.2d 1193, 1194 (8th Cir. 1981). Finally, Judge McSpadden is absolutely immune from suit for actions taken in his judicial role. *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). And, nothing in the complaint establishes that Judge McSpadden has acted either outside of his judicial capacity or absent jurisdiction. *Hamilton v. City of Hayti, Mo.*, 948 F.3d 921, 925 (8th Cir. 2020).

### B.     Post-arrest claims

Youngberg's primary claim is that he was unlawfully arrested on April 10, 2023. His constitutional claims arising <u>after</u> his arrest—the allegations of cruel and unusual treatment in the Stone County Jail, denied medical treatment, denied access to legal materials, and issues with the development of his criminal case—are separate issues from his claim about the lawfulness of his arrest. Youngberg cannot circumvent the filing fee requirement by joining unrelated claims. FED. R. CIV. P. 21. The Clerk is directed to send Youngberg a blank § 1983 complaint and IFP application should he wish to separately seek relief on these separate claims. The Defendants associated with Youngberg's post-arrest claims are dismissed without prejudice. The Clerk is directed to terminate the following Defendants:   Ben Lockard, Dylan Greenfield, Taylor Lowery, Angie Wade, Lindsey West, Jenifer Oblsom, and Kyle Dottson.

C.    *Younger v. Harris*

In *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), the Supreme Court held that federal courts should abstain from interfering in ongoing state proceedings. The Court explained the rationale for such abstention as follows:

> [The concept of federalism] represent[s] . . . a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id*. at 44.

Accordingly, a federal court must abstain from entertaining constitutional claims when: (1) there is an ongoing state judicial proceeding; (2) the state proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceedings to raise the constitutional challenges. *Yamaha Motor Corp. v. Stroud*, 179 F.3d 598, 602 (8th Cir. 1999); *Yamaha Motor Corp. v. Riney*, 21 F.3d 793, 797 (8th Cir. 1994). If all three questions are answered affirmatively, a federal court should abstain unless it detects "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).

Youngberg's current state criminal charges arose from the April 10, 2023 arrest. In his federal complaint, Youngberg offers a different version of events surrounding the arrest and alleges his arrest was unlawful. Because Arkansas has an important interest in its criminal justice procedures, this Court should abstain from entertaining his constitutional claims. Further, there is no indication of bad faith, harassment, or any other extraordinary circumstance that would make abstention inappropriate.

Having determined that the Court should abstain from entertaining Youngberg's claims, it

must decide whether to dismiss, or to stay, the case. Where only injunctive or equitable relief is sought, dismissal is appropriate. *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 481 (8th Cir. 1998). Although he does not explicitly state in his Third Amended Complaint, the relief he seeks, the Court takes notice that in his initial Complaint Youngberg seeks damages. (Doc. 2 at 23.) Accordingly, Youngberg's case is stayed and administratively terminated. *Stroud*, 179 F.3d at 603-04. The Court abstains from further screening Youngberg's official and personal capacity claims for unlawful arrest against Officer Duninol and Officer Laquin until the stay is lifted.

### D.     Motions

Youngberg's Motion for the Appointment of Counsel (Doc. 26) is DENIED. P*ro se* litigants do not have a constitutional or statutory right to appointment of counsel in civil cases. *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).

Youngberg's Motion for Preliminary Injunction (Doc. 32) is DENIED because this Court has no authority to take over his state criminal proceedings. For the same reason, Youngberg's Motion for Order (Doc. 39) in which he requests that he be taken into United State Marshal custody for his protection and for Defendants to be criminally charged is DENIED. He has no constitutional right to compel a police investigation or a prosecution. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Youngberg's Motions for Copies (Doc. 36 and & 40) are GRANTED in part and DENIED in part. His request for a copy of the docket sheet is granted; however, his request for a copy of his amended complaint filed in June 2023 is denied as it was mailed to him on June 23, 2023. Additionally, the additional documents he requests (Doc. 40) are simply docket entries reflecting mail returned as undeliverable.

**IV.     Conclusion**

1.     Youngberg's claims against Roger Gardner, Brandon Long, Patricia Hess, Ben Lockard, Autumn Youngberg, Ricky Canard, Dylan Greenfield, Taylor Lowery, Angie Wade, Travis Haynes, Leslie Haynes, Haylee Wilcox, Mason Patric, Tammy Harris, Lindsey West, Don McSpadden, Josh Rogers, Gorge Baffle, Jenifer Oblsom, and Kyle Dottson are dismissed without prejudice.

2.     Youngberg's Motion to Appoint Counsel (Doc. 26) is DENIED.

3.     Youngberg's Motion for Preliminary Injunction (Doc. 32) is DENIED.

4.     Youngberg's Motions for Copies (Doc. 36 & 40) are DENIED in part and GRANTED in part.   The Clerk is directed to send Youngberg a copy of the docket sheet.

5.     Youngberg's Motion for Order (Doc. 39) is DENIED.

6.     Youngberg's Motion to Amend/Correct Complaint (Doc. 37) is DENIED.

7.     Service on his sole remaining unlawful arrest claims against Officers Duninol and Laquin is not appropriate at this time.

8.     The Clerk is directed to send Youngberg a blank § 1983 complaint form and IFP application should he wish to seek relief on his separately raised constitutional claims.

9.     The Clerk of the Court is directed to stay and administratively terminate this proceeding pending final disposition of Youngberg's state criminal charges.

10.     Youngberg may file a motion to reopen this case after final disposition of his state criminal charges. Any motion to reopen must be filed with this Court within 60 days of the final disposition of his state criminal case.

11.     *In the even his state criminal case is still pending by this time next year*, Youngblood must file a status report by **July 19, 2024** to let the Court know the status of his state

criminal case. Failure to file a status report by July 19, 2024 will result in the Court dismissing his

case without prejudice for failure to prosecute.

    IT IS SO ORDERED this 19th day of July, 2023.


                            _____

                            UNITED STATES DISTRICT JUDGE